[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 8, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-15340

_____

D.C. Docket No. 01-00749-CV-ORL-22-JGG

DAVID L. MORRISON,

Plaintiff-Appellant,

versus

MAGIC CARPET AVIATION, a Delaware corporation,
RDV SPORTS, INC., a Michigan corporation,
HARRY MITCHEL, individually, ALTICOR, INC.,
a Michigan corporation, f.n.a. Amway Corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 8, 2004)**

Before EDMONDSON, Chief Judge, and TJOFLAT and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellant David Morrison was a pilot for Magic Carpet Aviation, Inc.[1]  He claims that his supervisor at Magic Carpet, Harry Mitchel, violated the Family Medical Leave Act of 1993 (FMLA), 107 Stat. 6, 29 U.S.C. §§ 2601-2654, by letting him take only two, rather than four, weeks off from work to deal with depression.  When Morrison requested additional time off, Mitchel fired him.  Morrison filed suit under the FMLA against Mitchel and three entities: (1) Magic Carpet, (2) Amway Corp., of which Magic Carpet was a wholly owned subsidiary, and (3) RDV Sports, Inc., which owned Orlando Magic, Ltd., a company that had a contract with Magic Carpet to fly players and staff for the Orlando Magic NBA basketball team around the country.

The district court granted summary judgment to the defendants on Morrison's FMLA claims because, in order for the statute to apply, the employer(s) at issue must have at least 50 employees within a 75 mile radius of the worksite.  See 29 U.S.C. § 2611(2)(B)(ii).  The court held that although Magic Carpet and Amway (as Magic Carpet's complete owner) were Morrison's joint employers, they did not have enough employees to make the FMLA applicable.  It also held that, as a matter of law, RDV Sports, Inc., was not Morrison's employer,

---

[1]  Because Magic Carpet was a wholly owned subsidiary of Amway, Morrison was also an employee of Amway.  Since Amway did not have any employees within 75 miles of his Magic Carpet worksite, however, that fact does not help Morrison's case.

integrated employer, or joint employer for purposes of the Act. Consequently, its employees could not be counted toward satisfying this requirement. In this appeal, Morrison challenges this latter ruling, contending that RDV Sports was his employer or, at the very least, his integrated or joint employer.

"When examining summary judgments, our review is plenary." Ga.-Pac. Corp. v. Lieberam, 959 F.2d 901, 904 (11th Cir. 1992). We review the district court's legal conclusions under a de novo standard. See Smith v. BellSouth Telecomms., Inc., 273 F.3d 1303, 1305 (11th Cir. 2001) (holding, in the context of an appeal from a district court's grant of summary judgment, that "question[s] of law . . . are review[ed] de novo"). The facts must be viewed in the light most favorable to the nonmovant. The court's ultimate conclusion as to whether these facts are sufficient to make RDV Morrison's employer under the FMLA is a mixed question of fact and law (involving the application of the law to particular facts) that is reviewed de novo. See Quik Cash Pawn & Jewelry, Inc. v. Sheriff of Broward County, 279 F.3d 1316, 1319 (11th Cir. 2001) ("We review the trial court's grant of summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party . . . .").

I.

RDV was clearly not Morrison's employer. In considering whether an

entity is an individual's employer, we consider: (1) whether or not the employment took place on the premises of the alleged employer; (2) how much control the alleged employer exerted on the employees; and (3) whether or not the alleged employer had the power to fire, hire, or modify the employment condition of the employees. Welch v. Laney, 57 F.3d 1004, 1011 (11th Cir. 1995) (quoting Wirtz v. Lone Star Steel Co., 405 F.2d 668, 669-70 (5th Cir. 1968)).

The third factor in this test cuts against Morrison. While RDV Sports, as a major client of Magic Carpet, could undoubtedly exert significant influence over its employment decisions, it did not actually have the power to hire or fire him directly. The simple fact that a major client can pressure an employer into firing a particular individual does not transmute that client into that individual's employer.

Our analysis of the first prong is somewhat complicated. Welch asks whether the worksite belonged to the employer, which raises the question of whether the employer must be the outright owner of the premises or if a leasehold interest would suffice. We do not read Welch as requiring fee simple ownership of the worksite; many companies, particularly in large cities, rent or lease office space in skyscrapers from the building's owners or a property management organization. Such a lessee undoubtedly "owns" the worksite of its employees for purposes of Welch, even though its claim to the property is only a leasehold.

4

Morrison's worksite was, essentially, the Boeing airplane he flew. Magic Carpet leased the plane from its actual owner, whose identity is not pertinent to this suit. Orlando Magic, Ltd., which was wholly owned by RDV, had a timeshare agreement in which it leased the plane from Magic Carpet for the times when it needed to fly its players to various games. The district court held that this "agreement was essentially a lease between the parties." As the owner of a leasehold interest in the airplane when it was being used to fly Orlando Magic players, Orlando Magic, Ltd., and hence RDV, could be thought of as the owner of Morrison's worksite at the relevant times.

This particular lease agreement, however, greatly circumscribed RDV's control over both the plane and its crew. It stated:

> All flights conducted under this Agreement shall be under the operational control of Magic Carpet. For the purpose of this Agreement, operational control shall include, without limitation, exclusive control over: (i) all crew members; (ii) determination whether any particular flight may be safely operated; (iii) assignment of crew members to particular flights; (iv) initiation and termination of all flights; (v) directions to crew members to conduct flights; and (vi) dispatch or release of flights.

While this agreement purports to lease the plane to RDV, it actually gave RDV no rights except to have its players sit back and be flown around. It did not give RDV any meaningful direct control over or in the worksite itself. Consequently,

5

we agree with the district court's conclusion that the first prong is of no avail to Morrison—though not without significant hesitation.

The second factor of the Welch test—the extent of control the alleged employer had over its putative employee—gives us even more pause, even though much of the evidence Morrison introduces to demonstrate that RDV had control over him is patently irrelevant. For example, the fact that it gave him various gifts and perquisites—including a holiday bonus, a discount at the Magic's FanAttic store, season tickets to Magic Games, invitations to RDV's summer picnic and Christmas party, and an invitation to volunteer at an Orlando Magic event—does not mean that it had control over him in any way. While, in the abstract, these facts are consistent with the existence of an employment relationship, and could be construed as even suggesting one in our everyday conception of the word, they do not show that RDV had control over him for purposes of the Welch test.

Because the parties agreed that Welch governs this action, we cannot consider any ways in which these facts might tend to prove that RDV was Morrison's employer outside of the standards articulated in Welch. Moreover, even if we were to conclude that Welch was based on an antiquated or unduly narrow conception of employment—a point which we do not reach—we would still be bound to uphold it under the prior panel rule. See United States v. Smith,

122 F.3d 1355, 1359 (11th Cir. 1997) ("[U]nder the prior precedent rule, we are bound by our earlier panel holdings . . . .").

Perhaps the best evidence of control Morrison offers is the fact that he was required to wear an RDV identification badge, Magic neckties, and a Magic parka. The district court found that Morrison had failed to introduce evidence that RDV specifically, rather than Magic Carpet, had required this. Consequently, there is no evidence that RDV had direct control over Morrison, rather than the indirect control over a service provider's employees that a customer may obtain by contracting with that service provider. Such indirect control does not amount to an employment relationship because the customer is in privity of contract with the service provider (which is itself an independent contractor of the customer), and not the service provider's employees. See, e.g., Moreau v. Air Fr., 343 F.3d 1179, 1190-91 (9th Cir. 2003) (concluding that "Air France should not be treated as a joint employer of the ground handling service company employees," even though Air France contracted with that company to provide services for its flights); Zhao v. Bebe Stores, Inc., 247 F. Supp. 2d 1154, 1159-60 (C.D. Cal. 2003) (declining to find that Bebe Stores was the employer of Apex's employees, despite the fact that Bebe hired Apex to produce some clothes that it sold, because "Apex had an ongoing business which hires, fires and supervises a significant number of

employees who perform services for companies other than Bebe Stores"); see also Granse v. Brown Photo Co., No. 3-80-338, 1985 U.S. Dist. LEXIS 18318, at *38-39 (D. Minn. July 1, 1985) (holding that a service provider—a professional photographer—"was not an employee of his customer's. . . . The customers had no actual control over him other than the indirect control of the purse strings and whether to order and pay for additional prints based on the proofs."). If RDV contracted with Magic Carpet to have Magic Carpet's employees wear RDP or Orlando Magic insignia, it is Magic Carpet, rather than RDV, who is compelling its employees to wear such apparel to satisfy its contractual obligations.

Perhaps most persuasively, the agreement between Orlando Magic, Ltd., and Magic Carpet specified that "all crew members," the "assignment of crew members to particular flights," and "directions to crew members to conduct flights," would be under the "exclusive control" of Magic Carpet. Morrison is hard pressed to overcome the plain language of this agreement, which expressly places exclusive control over him in Magic Carpet, rather than Orlando Magic, Ltd., and by extension RDV.

Putting aside the issue of control, the three factors that trouble us most are that he was required to wear an RDV identification badge, that he was required to attend an employee orientation at RDV, and that he was listed in RDV's staff

8

directory as an employee. These considerations do not easily fall within the Welch framework. Because Morrison failed to offer an employment-by-estoppel argument either below or on appeal, we need not consider this issue. See, e.g., Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1987) ("[I]ssues not argued on appeal are deemed waived . . . ."). For these reasons, we affirm the district court's conclusion that RDV is not Morrison's employer.

II.

In the alternative, Morrison contends that RDV, along with Amway and Magic Carpet, was his "integrated employer." The Department of Labor states that various companies may be an individual's "integrated employer" where they have "(i) Common management; (ii) Interrelation between operations; (iii) Centralized control of labor relations; and (iv) [A] [d]egree of common ownership/financial control." 29 C.F.R. § 825.104(c)(2).

Morrison fails to introduce any evidence concerning the first factor. Regarding the second factor, Morrison's only argument is that RDV looked to Amway for advice in restructuring its internal operations. The fact that RDV may have attempted to emulate Amway does not mean they were interrelated in any way. Moreover, Morrison fails to mention the district court's correct observation that RDV looked to a variety of other major companies for advice in its internal

9

restructuring as well.

Regarding the third prong, centralized control of labor relations, the most Morrison can point to is the fact that he was requested to attend an employee orientation at RDV when he was first hired. This is hardly enough to show centralized control over labor relations, much less that RDV and Magic Carpet were so integrated that they were, in effect, one entity.

The final prong of this test is the only one Morrison has satisfied; the wealthy DeVos family owns both Amway and RDV. As a matter of law, we do not believe that common ownership of two corporations is enough for a jury to conclude that they were integrated into one operation for FMLA purposes. Consequently, the district court was correct in concluding that RDV was not Morrison's integrated employer.

## III.

Morrison finally contends that RDV, Amway, and Magic Carpet were his "joint employers." The Department of Labor states that various companies may be an individual's "joint employers":

> Where there is an arrangement between employers to share
> an employee's services or to interchange employees; (2) Where
> one employer acts directly or indirectly in the interests of the
> other employer in relation to the employee; or, (3) Where the
> employers . . . may be deemed to share control of the employee,

> directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 825.106(a).

Notwithstanding the existence of the timeshare agreement, Magic Carpet and RDV did not "share" Morrison's service. Morrison was a pilot for Magic Carpet whose job was to fly Magic Carpet's clients to their destinations. Moreover, as discussed above, RDV lacked direct control over either Morrison or Magic Carpet. Consequently, the joint employer test does not apply.

The remainder of Morrison's contentions are merely restatements of his foregoing arguments and are wholly without merit. The judgment of the district court is, in its entirety,

AFFIRMED.