**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3423
_____

STANLEY KIEFFER,

Appellant

v.

CPR RESTORATION & CLEANING SERVICES, LLC;
CPR RESTORATION, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil Action No. 2-15-cv-03048)
District Judge:  Honorable Wendy Beetlestone

_____

Submitted under Third Circuit LAR 34.1(a)
on March 24, 2017

Before:  SMITH, Chief Judge, JORDAN and ROTH, Circuit Judges

(Opinion filed:  May 15, 2018)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

Stanley Kieffer sued his employers CPR Restoration & Cleaning Service, LLC (CPR LLC) and CPR Restoration, Inc., (CPR Inc.) and now appeals the District Court's grant of summary judgment in favor of CPR LLC and CPR Inc. For the reasons stated below, we will affirm the judgment of the District Court.

I.

Kieffer worked for CPR LLC from 2003 to 2008 and 2010 to 2013. He worked for CPR Inc. from January to June of 2014. CPR LLC and CPR Inc. are separate companies, both owned by Michael Fingerman. While Kieffer was working for CPR LLC, he claims he had diabetes and Crohn's disease, although he did not report this on his employee health insurance enrollment/change form. Around August 30, 2013, Kieffer injured his right shoulder and filed for worker's compensation, which he received. As Kieffer was not able to drive on the job, he also requested a driver as an accommodation. This request was denied by his manager John Fickenscher. Kieffer then requested, and was granted, leave beginning in September 2013. Around October 18, 2013, Kieffer told CPR LLC that he was returning on November 13, 2013. When Kieffer arrived unannounced to return to work on November 4, 2013, CPR LLC terminated him. Kieffer then filed a Charge of Discrimination with the Equal Employment Opportunity Commission. When Fingerman found out that Kieffer had filed the Charge, he sent him a text, stating, "What the fuck is this?"[1]

---

[1] The District Court notes that it is not clear whether Kieffer was already employed by CPR Inc. when the text was received.

In January 2014, CPR Inc. hired Kieffer as a supervisor, requiring him to commute daily to Northern New Jersey from his home in Pennsylvania. Kieffer's manager, Joseph Keller, discussed paying to move Kieffer to New Jersey in order to shorten his commute. Kieffer claims that, after Fingerman found out that Kieffer had filed a Charge of Discrimination, Keller refused to pay for the move. Kieffer claims that this decision amounted to a constructive discharge, causing him to quit CPR Inc. in June 2014.[2]

When the 180-day period had elapsed after the filing of the EEOC charge, Kieffer filed this action in the Eastern District of Pennsylvania against both CPR LLC and CPR Inc., alleging violations of the Americans with Disabilities Act (ADA), the Pennsylvania Human Relations Act (PHRA), and the Family Medical Leave Act (FMLA), as well as Pennsylvania state law.

At the close of discovery, CPR LLC and CPR Inc. moved for summary judgment. The District Court held that CPR LLC and CPR Inc. were not joint/integrated employers for the purposes of the FMLA. The District Court additionally found that Kieffer was not a "qualified individual" under the ADA and that Kieffer did not prove causation necessary for retaliation. Accordingly, the District Court granted summary judgment on Kieffer's ADA, PHRA, FMLA, and Pennsylvania law retaliation claims. Kieffer appealed.

---

[2] Kieffer has taken a job in Florida. He and his wife moved there at their own expense.

II.[3]

A.

While neither CPR Inc. nor CPR LLC alone meet the employment requirements for the FMLA,[4] Kieffer alleges that CPR Inc. and CPR LLC constitute a single employer under the integrated employer test so that they jointly meet the employment requirements for the FMLA.[5]  Because we find that CPR Inc. and CPR LLC do not constitute a single employer, we will affirm the District Court's grant of summary judgment on Kieffer's FMLA claims.

The integrated employer standard is rigorous and is satisfied when "two entities are 'so integrated that they [are], in effect, one entity.'"[6]  While case law regarding the integrated employer test is sparse, courts consider factors such as "(i) [c]ommon management; (ii) [i]nterrelation between operations; (iii) [c]entralized control of labor relations; and (iv) [d]egree of common ownership/financial control."[7]  The critical

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and exercised supplemental jurisdiction over Kieffer's state law claims.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a grant of summary judgment, and make all inferences in favor of the nonmoving party. *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013).

[4] The FMLA applies to employers who employ "50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year[.]"  29 U.S.C. § 2611(4)(A)(i).

[5] Kieffer alleges that CPR Inc. and CPR LLC constitute a single employer under both the joint employment and integrated employer tests but only provides evidence for the integrated employer test.  We will not discuss the joint employment test but note that the outcome would be the same under it.

[6] *Braden v. Cty. of Washington*, 749 F. Supp. 2d 299, 307 (W.D. Pa. 2010) (alteration in original) (citation omitted).

[7] 29 C.F.R. § 825.104; *accord Grace v. USCAR*, 521 F.3d 655, 664 (6th Cir. 2008).

criterion is centralized control over labor relations.[8]  We conclude that, under the test,

Kieffer has not created a genuine issue of material fact as to whether CPR Inc. and CPR

LLC are integrated employers.

First, Kieffer has not provided sufficient evidence of common management. While

Fingerman, as owner, presumably can hire or fire employees at either entity, each entity

has separate managers and there is no evidence that the managers for either entity had

authority in the other entity.[9]

Second, while both CPR Inc. and CPR LLC perform disaster cleaning services,

each has separate offices, equipment, and records.  Even though Fingerman has offices at

both CPR LLC and CPR Inc. and some employees periodically perform work for both

entities, this is insufficient to establish interrelated operations.  Fingerman's offices in

both entities are merely a reflection of his ownership; the fact that a few administrative

employees supported both entities is insufficient to create a genuine issue of material fact.

*See Engelhardt v. S.P. Richards Co., Inc.*[10]

Third, there is no evidence of centralized labor relations.  While Fingerman had

the authority to hire and fire in both entities, he refrained from interfering in

Fickenscher's decision to fire Kieffer.  According to Kieffer, Fingerman said that "he put

John Fickenscher in position as the manager to run the company, and he's not going to

step on his toes.  If [Fickenscher] made the decision to let [Kieffer] go, then he has to

---

[8] *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003).
[9] *Cf. Grace*, 521 F.3d at 665 (finding no common management where one company did not oversee the other's corporate decisions or facilities).
[10] 472 F.3d 1 (1st Cir. 2006).

stand by it."[11]  Additionally, there is no evidence that the managers of one entity had any control over the labor decisions of the other entity.

The final factor is whether there is common ownership of the two entities.  We have noted that common ownership alone does not create a genuine inference that the two entities are a single entity.[12]  While Fingerman owns both CPR LLC and CPR Inc., Kieffer did not introduce evidence that this common ownership translated into the two entities having a corporation/division relationship.

For these reasons, Kieffer has not introduced enough evidence to create an inference that one company "control[led] enough facets of [the other's] business and operations, such that it has not maintained its economic distinctness."[13]  Since individually neither CPR Inc. nor CPR LLC has a sufficient number of employees to be subject to the FMLA, we will affirm the District Court's grant of summary judgment on Kieffer's FMLA claims.

B.

Kieffer alleges discrimination in violation of both the ADA and PHRA; given that the ADA and PHRA have been interpreted coextensively,[14] we will discuss only the

---

[11] A 165.
[12] *Limbach Co. v. Sheet Metal Workers Int'l Ass'n, AFL-CIO*, 949 F.2d 1241, 1260 (3d Cir. 1991) ("However, since common ownership is always present in a sister-corporation situation, it alone does not establish single employer status.") (citation omitted).  *See also Engelhardt*, 472 F.3d at 8; *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1257 (11th Cir. 2004) ("As a matter of law, we do not believe that common ownership of two corporations is enough for a jury to conclude that they were integrated into one operation for FMLA purposes");
[13] *Engelhardt*, 472 F.3d at 5.
[14] *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).

ADA claims. To establish an ADA discrimination claim, a plaintiff must establish, *inter alia*, that he is qualified for his position because he can perform the "essential functions" of his job with or without reasonable accommodations.[15] The District Court determined that Kieffer was not qualified for his position because he was unable to perform physical labor after his injury with or without reasonable accommodation. On appeal, Kieffer makes two arguments: 1) physical labor was not an essential function of his employment, and 2) even if it were, leave would be a reasonable accommodation that would allow him to perform such a function. We address each argument in turn.

1.

Kieffer argues that he could perform his supervisory role with the reasonable accommodation of a driver. CPR LLC asserts that physical labor was an essential function of Kieffer's job; thus, its refusal to provide a driver was appropriate because Kieffer could not perform manual labor even with such an accommodation. We agree.

A function is considered essential if it is "fundamental" to the position. Factors used to determine whether a function is essential include the 1) employer's judgment, 2) written job descriptions, 3) time spent on the job performing the function, 4) consequences of not requiring a worker to perform the function, 5) terms of a collective-bargaining agreement, 6) work experience of past employees in the job, and

---

[15] *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) ("In order to make out a prima facie case of disability discrimination under the ADA, [the plaintiff] must establish that she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." (citation omitted)). CPR LLC does not contest that Kieffer is disabled or that he suffered an adverse employment action, it just contests that he is qualified.

7) work experience of current employees in similar jobs.[16]

In considering this question, we will look only at the essential functions of the job at CPR LLC because that is where Kieffer was working at the relevant time. While determining whether a task is an essential function is generally a fact-intensive inquiry,[17] the only evidence Kieffer offers to show that physical labor was not an essential function is his self-contradictory deposition testimony and the testimony of a manager at CPR Inc. At his deposition, Kieffer first testified that physical labor was part of his daily work. He claimed that he would work with his crew whenever a job needed to be rushed, and that he would perform physically-intensive "board-ups" alone. Kieffer testified that he was compensated equally for board-ups and for other jobs that he supervised and that he considered both activities as part of his employment. Later in his deposition, however, Kieffer claimed that, in the context of supervision, "[i]t was [his] choice if [he] did physical work with the guys."[18] Kieffer also offered testimony from Keller that a supervisor is not required to do physical labor. However, Keller was describing supervisors at CPR Inc., not CPR LLC, so his testimony cannot bear on Kieffer's responsibilities at CPR LLC. In response, CPR LLC produced evidence that physical labor is an essential function, including a job description in Kieffer's Employment Agreement, a job description on Craigslist, and the actual time spent performing the function.[19] Kieffer's contradictory personal testimony and Keller's testimony about CPR

---

[16] *Id*. at 612.
[17] *Id*. at 614.
[18] A 163.
[19] Kieffer testified that he physically assisted his crew "most of the time." A 151-52.

Inc. supervisors is insufficient to render the question, whether physical labor was an essential function of Kieffer's position at CPR LLC, a genuine issue of material fact. For this reason, we conclude that it was an essential function and that Kieffer was not qualified for the position when he could not perform physical labor.

2.

Having decided then that physical labor was an essential function, we conclude nevertheless that the leave requested here was not a reasonable accommodation. Kieffer argues that the leave he requested would have allowed him to perform his essential functions after he returned from leave. The District Court dismissed this claim on the basis that the leave requested was indefinite and that other circuits have found that indefinite leave is not a reasonable accommodation.[20] The basis for such a holding reflects the fact that an accommodation of a short period of definite leave would enable an employee to perform his essential job functions in the near future, as for example if the leave was taken in order to schedule a future course of treatment.[21] The request for leave here specified neither a leave for a definite period, nor a return in the near future.

Kieffer did ask for time off and it was granted. However, the testimony at the later depositions indicates that the request for leave was worded loosely as being for a few weeks or a few months. There is not any record that leave was requested as an accommodation or that it was requested for a definite rather than an open-ended period of time.

---

[20] *See Rascon v. U. S. West Communications, Inc.*, 43 F.3d 1324, 334 (10th Cir. 1998).
[21] *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004).

Because, making all reasonable inferences for the non-movant, we cannot find that the requested leave was for a definite period or that it was a reasonable accommodation, we will affirm the District Court's grant of summary judgment on Kieffer's ADA/PHRA claims.[22]

C.

Kieffer also appeals the District Court's grant of summary judgment on his retaliation claims under the ADA/PHRA, FMLA, and Pennsylvania worker's compensation law. As noted above, since CPR LLC and CPR Inc. are not subject to the FMLA, we will analyze Kieffer's retaliation claims only under the ADA/PHRA and Pennsylvania worker's compensation law.

To establish a prima facie case of retaliation,[23] a plaintiff must show 1) a protected activity, 2) an adverse employment action, and 3) a causal connection.[24] "To demonstrate a causal connection, a plaintiff generally must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or

---

[22] As for Kieffer's claims that CPR LLC and CPR Inc. failed to accommodate his other potential disabilities, including Crohn's Disease and diabetes, Kieffer did not identify any other specific occasion during the relevant time period when he requested time off for other medical issues except for the instance when he asked for, and was denied, time off for a common cold. We will therefore affirm the District Court's dismissal of these other claims for failure to accommodate.

[23] The Pennsylvania Supreme Court has not provided any guidance on the elements of the prima facie case for retaliation claims under Pennsylvania law. District court opinions have applied the Title VII burden-shifting framework. *See Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 639 n.9 (M.D. Pa. 2006). The parties follow this structure in their briefings. We will also apply this framework.

[24] *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004) (citation omitted).

(2) a pattern of antagonism coupled with timing to establish a causal link."[25]  Kieffer

raises retaliation claims under the ADA/PHRA for both his terminations and a retaliation

claim under Pennsylvania worker's compensation laws for his termination from CPR

LLC.  We will address each in turn.

1.

a.

Kieffer's ADA retaliation claim from CPR LLC alleges that he was terminated for

two protected activities:  requesting an accommodation and utilizing the reasonable

accommodation of taking leave.

Requesting an accommodation in good faith is a protected activity.[26]  Kieffer

requested leave two months before his termination.  We have held that over two months

between protected activity and adverse employment activity—without more—is

insufficient to prove causation;[27] Kieffer cannot rely on suggestive timing alone.  Absent

suggestive timing, Kieffer could prove retaliation by CPR LLC by producing evidence

that Kieffer's request for a break "was the likely reason for h[is] termination."[28]  Kieffer

seeks to establish causality in a number of ways:  he first claims that Fingerman and

Fickenscher denied him time off for his Crohn's disease; however, since he claims this

happened only in 2008-2009, it could not be in retaliation for his request for a break in

---

[25] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (internal quotation marks and citation omitted).
[26] *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) (finding that the right to request an accommodation in good faith is protected conduct).
[27] *Williams*, 380 F.3d at 760.
[28] *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 179 (3d Cir. 1997) (internal quotation marks and citation omitted).

2013. Second, Kieffer alleges that Fingerman discussed his concern about Kieffer's medical condition interfering with his job "seven or eight times over the last four or five years."[29] Since these discussions were not limited to the period following his request for accommodation, we have no evidence upon which to infer antagonism. Finally, Kieffer alleges that the facilities manager told him that Fingerman did not believe he hurt his shoulder; however, despite skepticism of his shoulder injury, CPR LLC granted Kieffer leave. None of this constitutes a pattern that would establish an inference that Kieffer was fired for requesting leave as an accommodation.

b.

Kieffer's retaliation claim against CPR Inc. under the ADA/PHRA alleges that he was constructively terminated in June 2014 for filing a claim for discrimination in November 2013. Kieffer claims that Fingerman's "What the fuck is this?" text in January 2014 is evidence of rising antagonism that led CPR Inc. to renege on its promise to move Kieffer to New Jersey. Kieffer also vaguely alleges that Keller denied him leave to get medicine for a bad cold. Taken together, this evidence cannot create an inference of causality. Even assuming that CPR Inc.'s reneging on its promise to relocate Kieffer qualifies as an adverse employment action, Kieffer alleges no other evidence to suggest any hostility or antagonism between the filing of the EEOC claim and the denial of moving costs. The Fingerman text message alone cannot rise to the level of suggestive evidence, since Kieffer continued to be employed with CPR Inc. for months after the text. The denial of leave to get medicine is similarly too vague and too minimal to create such

---

[29] A 146.

an inference.

For this reason, we will affirm the District Court's grant of summary judgment for Kieffer's retaliation claims under the ADA against CPR Inc.[30]

2.

Kieffer also brings retaliation claims under Pennsylvania worker's compensation law, alleging that his termination from CPR LLC was retaliation for his request for worker's compensation in August 2013. Kieffer relies on the same arguments as he used for the ADA/PHRA retaliation claim for his termination from CPR LLC. While Kieffer characterizes the protected activity as *receiving* worker's compensation, he does not provide any authority for this. Under Pennsylvania law, however, *requesting* worker's compensation is a protected activity.[31] Kieffer requested worker's compensation even earlier than he requested leave, more than two months before his alleged termination. As discussed above, two months between protected activity and adverse employment activity—without more—is insufficient to prove causation.

Kieffer cannot prove temporal proximity plus animus in this context either.

––––––––––––––––––––

[30] As an alternative ground, Kieffer offers evidence that CPR LLC and CPR Inc.'s reasons for terminating him are pretextual. Evidence of pretext is appropriate only when the employer has met its burden of production and has asserted a legitimate, nonretaliatory reason for the challenged action. *See Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 764 (3d Cir. 1989) (citations omitted). Even if the Defendants made such a showing, Kieffer has not introduced evidence sufficient to prove that "retaliation was the real reason for" his constructive termination. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (internal quotation marks and citation omitted).

[31] *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998) ("The Workers' Compensation Act does provide a basis for our finding that termination of an at-will employee for filing a workers' compensation claim violates public policy.").

Kieffer argues that the fact that CPR LLC expressed skepticism of the injury is sufficient to establish animus. Not only is this insufficient to establish animus on its own, but paired with the fact that CPR LLC did not request a hearing or file any motions opposing the grant of worker's compensation, Kieffer has not introduced sufficient evidence of causation. Accordingly, we will affirm the District Court's grant of summary judgment for Kieffer's retaliation claims under Pennsylvania worker's compensation laws.

III.

For the aforementioned reasons, we will affirm the District Court's grant of summary judgment against Kieffer.