**Jaime RIOS, Plaintiff,**

v.

**ALTERNATE CONCEPTS, INC., Defendant.**

**Civil No. 09–2166(CVR).**

United States District Court, D. Puerto Rico.

Nov. 3, 2010.

Julio E. Gil–De–Lamadrid, Gil De Lamadrid, PSC, Bayamon, PR, for Plaintiff.

Alcides A. Reyes–Gilestra, San Juan, PR, for Defendant.

## OPINION AND ORDER

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Jaime Ríos (hereafter "plaintiff Ríos") was an employee of defendant Alternate Concepts, Inc., (hereafter "defendant Alternate Concepts") from April 2004 until his discharge from employment on September 5, 2006. Plaintiff Ríos was, at the time of his employment, a participant of the group health plan which was maintained by defendant Alternate Concept through Triple–S.

Plaintiff Ríos filed a federal complaint against defendant Alternate Concepts for alleged violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 (hereafter "COBRA"). Title 29, *United States Code*, Section 1166(a)(2)–(4). Plaintiff Ríos claims that, after his discharge from employment, defendant cancelled his medical insurance without giving him the opportunity to take the benefits under COBRA. (Complaint, ¶¶ 12–13).

Defendant Alternate Concepts filed a motion for summary judgment indicating entitlement to summary disposition for there is no genuine controversy of material facts that plaintiff had timely been provided COBRA notice as to the medical plan coverage, as required by law. (Docket No. 46). Defendant's memorandum of law in support of the request for summary judgment and the statement of undisputed facts were also filed, as well as the certified translations of attachments and exhibits. (Exhibits 1 and 2, Docket 46; Docket No. 49).

Plaintiff Ríos filed a response arguing there is a controversy of material facts for the medical plan had been cancelled previous to the discharge from employment, without negating the notice requirement was fulfilled. (Docket No. 51).

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment,

could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997).

In *Torres Rosado v. Rotger Sabat*, 204 F.Supp.2d 252 (D.Puerto Rico 2002), *affd.* 335 F.3d 1 (1st Cir.2003), the presiding judge clearly indicated that oppositions are required by the district court's local rules and, as such, deemed that a motion for summary judgment, and the factual assertions supporting it, to be unopposed, because plaintiff had failed to timely file his opposition (*holding* that the district court in Puerto Rico is justified in having one party's uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules).[1] The moving party's uncontested facts and other evidentiary facts of record on an uncontested motion for summary judgment must still show that said party would be entitled to summary judgment. A district court

may not automatically grant a motion for summary judgment simply because the opposing party has failed to comply with a local rule requiring a response within a certain number of days. *See NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7–8 (1st Cir.2002); *see also Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42, 43 (1st Cir. 2004) (*finding* that failure to comply with then Local Rule 311.12 admits the veracity of the movant's version of material facts).

## UNCONTESTED ISSUES OF FACTS

The following material facts, proposed by defendant and considered relevant for resolution of the pending motion for summary judgment as to the only claim of the complaint under COBRA, are uncontested:

1. Alternate Concepts provides mass transit rail services in Puerto Rico and other cities in the mainland. Alternate Concepts operates the "Tren Urbano" mass transit rail system, through a contract with the Puerto Rico Highway Authority. *Deft's Uncontested ¶ 1; Myrna Vergara Unsworn Statement under Penalty of Perjury, ¶ 1, Exhibit I.*

2. Alternate Concepts provides employees group health plan benefits though Triple S. *Deft's Uncontested 12; Exhibit I, 12.*

3. Myrna Vergara administrates group health plan benefits at Alternate Concepts. Mrs. Vergara is the Benefits Clerk at Alternate Concepts. *Deft's Uncontested ¶ 3; Exhibit I, ¶¶ 2–3.*

4. Alternate Concepts follows the following practice regarding notification of COBRA rights and obligations to employees who undergo qualifying events. As soon the Human Resources Manager or

**1.** *See, e.g., Cordero–Soto v. Island Finance,* 418 F.3d 114 (1st Cir.2005); *United Parcel Serv., Inc. v. Flores–Galarza,* 318 F.3d 323, 330 & n. 10 (1st Cir.2003); *Corrada Betances v. Sea–Land Serv., Inc.,* 248 F.3d 40, 43 (1st Cir.2001); *Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33–34 (1st Cir.2001); *Ruiz Rivera v. Riley,* 209 F.3d 24, 27–28 (1st Cir.2000).

the Human Resources Supervisor advises the Human Resources Benefits Clerk that a qualifying event has occurred, such as a termination, the Benefits Clerk accesses in her computer the COBRA notice form letter, which she personally addresses to the employee.

The COBRA notice form letter is in Spanish and consists of one (1) page. The COBRA notice form letter contains as an attachment a COBRA pamphlet also in Spanish with the title of *"Informatión Importante sobre sus Derechos a Continuatión de Benefitios bajo COBRA"*. The attachment to the letter is not personalized. The Benefits Clerk routinely hand delivers to the employee the COBRA notice form letter and the COBRA pamphlet and provides the employee an orientation regarding COBRA. When COBRA documents are hand delivered, the Benefits Clerk requests the employee to countersign the first page of the document, which is the COBRA form notice letter, as evidence of receipt and the document is filed in the employee's terminated file. In those cases where it is not possible to hand deliver the COBRA documents to the employee, the COBRA notice letter and the COBRA pamphlet are sent by mail to the employee.

When a qualifying event occurs, the Benefits Clerk is also responsible for serving notice to the group health plan insurance company that a qualifying event occurred and sends it the form which is required for this purpose. Consistent with the established practice, the Benefits Clerk served Triple S notice of plaintiff Ríos' qualifying event and it proceeded to terminate coverage. Triple S terminated coverage for Mr. Ríos retroactive to September 1, 2006 because at the time that the qualifying event occurred on September 5, 2006, Alternate Concepts had not yet paid the medical plan due for employees on payroll for the month of September, which included Mr. Ríos.

The Benefits Clerk usually processes the Triple S' invoices for the monthly premium assessment for employees who are covered under their plan during the second week of the month and Alternate Concepts issues the payment to Triple S close to the end of the month. Therefore, in Mr. Ríos' specific case, Alternate Concepts was not obliged to pay the health plan premium for September, because when the invoices were processed, Mr. Ríos' coverage had been terminated in light of the qualifying event that occurred on September 5, 2006. Triple S terminated Ríos' medical coverage through a letter dated September 8, 2006. This letter was sent by mail to Ríos with copy to Alternate Concepts. *Deft's Uncontested ¶ 4; Exhibit I, ¶ 4; Exhibit II, page 79.*

5. The above described procedure was followed in Mr. Ríos' case. Specifically, Mrs. Vergara personally addressed and signed the COBRA notice form letter for Mr. Ríos. Also, in light of the documents in Mr. Ríos' file, which include the exit interview form signed by Ríos and the COBRA notice form letter that Mrs. Vergara prepared and signed, and that Ríos countersigned as evidence of receipt, it is an uncontested fact that the COBRA documents were hand delivered to Mr. Ríos at his exit interview process on September 7, 2006. *Deft's Uncontested H5; Exhibit I, ¶ 5.*

Plaintiff Ríos admitted in his deposition that he did receive these documents on September 7, 2006. *Deft's Uncontested ¶ 5; Attachments to Exhibit I; Plaintiff Ríos' depo. p. 50, line 14–25, Exhibit 2.*

Plaintiff Ríos countersigned the first page of the documents, which is the COBRA notice form letter, and copy of this document was placed in his terminated employee file, where it remains today.

*Deft's Uncontested ¶ 5; Exhibit I, ¶ 5, Attachments to Exhibit I, Exhibit II, p. 50, line 14–25.*

6. While employed at Alternate Concepts, Mr. Ríos was enrolled in the family coverage of the Company's group health plan. The total cost of plan was $338.40 monthly. Of this amount, Mr. Ríos paid $61.32 monthly through payroll withholdings and Alternate Concepts paid the difference of $277.08 (Exhibit I, ¶ 7). Had Ríos elected COBRA coverage, which he did not, he would have had to pay the full premium, plus 2% administrative charge, or a total of $345.20 monthly. *Deft's Uncontested ¶ 7; Exhibit, ¶ 7.*

7. Mr. Ríos never contacted Alternate Concepts or Triple-S to inquire about COBRA coverage or to enroll in continued coverage. *Deft's Uncontested ¶ 9; Exhibit II, p. 56, lines 10–22.*

8. The COBRA notice form letter hand delivered to Mr. Ríos stated the telephone number he had to call at Triple-S if he had any questions regarding COBRA coverage. The letter also stated that his coverage would end in light of the qualifying event. However, Mr. Ríos never elected to enroll in COBRA coverage and he never contacted Triple-S to inquire any matter regarding medical plan coverage. *Deft's Uncontested ¶ 9; Exhibit I, ¶ 7 and attachments to Exhibit I; Exhibit II, p. 56, lines 10–22.*

9. Plaintiff Ríos has not averred that he has suffered any type of prejudice on account of the termination of health benefits and he has no evidence that he incurred in medical expenses after his termination at Alternate Concepts. *Deft's Uncontested ¶ 10; Complaint, Joint Initial Case Scheduling Conference Memorandum, Exhibit II, pp. 85–87.*

Plaintiff Ríos' reply in opposition to summary judgment submits, contrary to Local Rule 56, which requires a separate statement denying or qualifying defendant's statement of material facts[2], a commingled five-page document containing the memorandum of law, reference to some attachment of the personnel file, and some statement of material facts that:

1. It is uncontested that plaintiff Ríos dates of employment were those indicated by defendant. *Plaintiff's Uncontested 5a, Exhibit 1, pp. 5–7, 70–71.*

2. It is uncontested defendant delivered a letter to plaintiff Ríos on September 7, 2006, stating about his right to continue his medical plan with Triple-S. *Plaintiff's Uncontested 5b.*

3. Plaintiff Ríos' personnel file shows medical coverage was terminated on September 1, 2006, before he was terminated from employment. *Plaintiff's Uncontested ¶¶ 6–7.*

4. Plaintiff's personnel file, as provided to plaintiff's counsel during discovery, did not contain the attachment to the letter of September 7, 2006. *Plaintiff's Uncontested ¶ 8; Deft's Exhibit 2.*

As such, plaintiff Ríos did not deny having received notice related to benefits un-

---

**2.** Local Rule 56 provides:

**(c) Opposing Statement of Material Facts.** A party opposing a motion for summary judgment shall submit with its opposition *a separate,* short, and concise statement of material facts. *The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts.*

Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement *may* contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule. *(Emphasis supplied ).*

der COBRA as demonstrated by the counter-signature on the bottom of the letter of September 7, 2006. Deft's Uncontested ¶ 5, Plaintiff Ríos' depo. p. 50. Counsel for plaintiff Ríos solely argued, during the deposition of Mr. Ríos, that during discovery he was not provided with the document attached to the letter related to the COBRA notice. *Plaintiff's Uncontested ¶ 4; Plaintiff Ríos' depo. p. 56.* In the opposition to summary judgment counsel then submits the averment plaintiff Ríos had testified not having seen the document attached. Said conclusion is unsupported by the evidence submitted both by defendant's uncontested facts and by plaintiffs opposition, as well as reference to deposition testimony of Mr. Ríos at pages 50 and 56.

Defendant Alternate Concept's averments, as well as the documentary evidence kept in its regular course of business, show plaintiff Ríos did counter-sign the receipt of an appropriate and timely notice under COBRA. It is also uncontested, plaintiff Ríos did not communicate with Triple–S, the health provider, as to any question or doubt, nor attempted to seek the continuance of the health plan or even that he needed the same or incurred in any medical expense after being discharge from employment.

## LEGAL ANALYSIS

■ Succinctly, defendant Alternate Concept has established as uncontested that it complied with the COBRA notice after plaintiff's employment termination by providing and hand delivering COBRA notice timely to plaintiff Ríos.

COBRA requires employers to give employees the opportunity to continue health care coverage for a specified period of time after a qualifying event, at the employee's expense. Title 29, *United States Code,* Section 1161(a); *see Claudio–Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99, 103 (1st Cir.2004). Termination of employment is considered a qualifying event. Title 29, *United States Code,* Section 1163(2). COBRA also requires employers to notify health care plan administrators of the termination within thirty (30) days of the qualifying event. *Id.* § 1166(a)(2).

■ Thereafter, plan administrators have fourteen (14) days to notify the qualified beneficiary of the right to continued coverage. *Id.* § 1166(c). COBRA does not state how notice should be given. But courts addressing this issue have held that a good faith attempt to comply with a reasonable interpretation of the statute is sufficient. *See Smith v. Rogers Galvanizing Co.,* 128 F.3d 1380, 1383–84 (10th Cir. 1997) (internal quotation marks omitted); *see also, e.g., Degruise v. Sprint Corp.,* 279 F.3d 333, 336 (5th Cir.2002) [E]mployers are required to operate in good faith compliance with a reasonable interpretation of what adequate notice entails; *Branch v. G. Bernd Co.,* 764 F.Supp. 1527, 1534 n. 11 (M.D.Ga.1991) ([C]ourts have generally validated methods of notice which are calculated to reach the beneficiary.), *aff'd* 955 F.2d 1574 (11th Cir.1992).[3]

The Court of Appeals for the First Circuit determined in *Claudio–Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99 (1st Cir.2004) that fact issue as to whether employer had mailed to terminated employee notification of right to extended

---

**3.** Several courts have specifically found that employers are in compliance with § 1166(a) when they send COBRA notices via first class mail to an employee's last-known address. *See Holford v. Exhibit Design Consultants,* 218 F.Supp.2d 901, 906 (W.D.Mich.2002); *Torres–Negron v. Ramallo Bros. Printing, Inc.,* 203 F.Supp.2d 120, 124–25 (D.Puerto Rico 2002). *See also Torres Negron v. Merck & Company, Inc.* 488 F.3d 34 (1st Cir.2007).

health care coverage under employee benefit plan required by COBRA precluded summary judgment for employer in employee's action alleging failure to comply with statutory notice requirement. Therein, the only evidence of notification in employer's possession was a note written to an employee stating that the employer had never received return receipt for the certified-letter notice, and unsigned Postal Service form used to record receipt, neither of which compelled conclusion that notice was mailed. Such is not the situation in the case at bar since plaintiff Ríos did countersign the notice of having received in person notice from the employer Alternate Concept regarding COBRA.

■ Plaintiff Ríos negates effective notice because the health plan had been cancelled prior to his discharge, that is, by September 1, 2006, although he was terminated from employment on September 5, 2006. Still, defendant Alternate Concept has presented and supported a reasonable explanation for that discrepancy in the date. Although medical coverage for Mr. Ríos appears to have cancelled retroactively to September 1, 2006, and the qualifying event as to employment discharge indeed occurred on September 5, 2006, defendant

Alternate Concept clarified it had not yet paid the medical plan due for employees on payroll for the month of September, which included Mr. Ríos, for which the effect was retroactive to said payment. Since the employer Alternate Concepts would have processed the health care provider Triple–S' invoices for the monthly premium assessment for employees who were covered under their plan during the second week of the month and issued the payment to Triple S close to the end of the month, the employer was not obliged to pay the health plan premium for September, because when the invoices were processed, Mr. Ríos' coverage had been terminated.

■ This explanation seems sufficient for determining there is no controversy of genuine material fact as to the notice having been adequately provided to plaintiff Ríos. In addition, Triple–S, the health provider, also notified by mail plaintiff Ríos about the termination on September 8, 2007,[4] and plaintiff Ríos testified he did not attempt to communicate his interest or intention to remain under the medical plan to said health provider.[5]

■ Section 1059 requires employers to maintain records sufficient to determine

---

4. Defendant Alternate Concepts argued that even if the health plan is considered as retroactively discontinued, under the IRS' COBRA regulations, during the election period, the plan sponsor is free either to drop the qualified beneficiary from the plan and then retroactively reinstate the qualified beneficiary if he or she elects COBRA coverage, or to continue coverage on a conditional basis and retroactively cancel it if COBRA coverage is not elected. Once the qualified beneficiary elects COBRA coverage, such coverage is in force. If any premium payment, including the initial premium payment, is not made on a timely basis, COBRA coverage may be terminated retroactive to the first day of the period to which the unpaid premium relates. *See Communications Workers of Am. v. NYNEX Corp.*, 898 F.2d 887 (2d Cir.1990)

(striking employees were entitled to continuation of medical benefits under Cobra and regulation provides payment during grace period allowed for continuation of coverage); Internal Revenue Code (I.R.C.) § 4980B(f)(2)(B)(iii); I.R.C. § 4980B(f)(2)(B)(iii); *cf. Switzer v. Wal–Mart Stores, Inc.*, 52 F.3d 1294 (5th Cir.1995) (employer not liable for late payment for employee's COBRA coverage gap).

5. An employer has statutory duty to maintain records sufficient to show that it complied with COBRA and the burden to prove compliance was shifted to the employer because an employer's failure to maintain these records should not allow to defeat employees' right to recovery.

the benefits due or which may become due to employees. COBRA right was duly notified as to plaintiff Ríos to continue his health care coverage, including information for him to contact the health provider Triple–S. Accordingly, in its role as employer, Alternate Concept has complied with its statutory duty to maintain records to determine notice was given pursuant to Section 1166. Alternate Concept has properly established there is no disputed fact on the issue.

 In addition, prejudice nor damages was established by plaintiff Ríos. The complaint fails to indicate plaintiff Ríos incurred in any expenses at all or that he even required medical services and/or had to pay same with out-of-pocket monies because of a lack of medical plan benefits. This was further established through plaintiff Ríos' deposition testimony.[6]

Having defendant Alternate Concepts established there is no genuine material fact in controversy that would preclude the entry of summary judgment as to compliance with COBRA requirements, summary disposition of the plaintiffs claim is warranted.

### CONCLUSION

Considering the above discussed, defendant's Motion for Summary Judgment (Docket No. 46) is GRANTED. Accordingly, there being only a federal claim under COBRA submitted in the Complaint, the same should BE DISMISSED, WITH PREJUDICE, and judgment be entered for defendant.

IT IS SO ORDERED.

---

6. However, whether there is prejudice or bad faith it may be considered by the court when imposing the penalty for non-compliance with COBRA under Section 1132(c), and is within the discretion of the court. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir.1988).